MARKLEY, Plaintiff in error, vs. THE STATE, Defendant in
error.

*May 15—June 3, 1909.*

*Intoxicating liquors: Sale without license: Evidence: Reading to
jury: Consent.*

1. A conviction of selling intoxicating liquors without a license is
   *held* to be sustained by the evidence in this case.
2. After retiring, the jury returned into court announcing a dis-
   agreement upon a certain point. Counsel for the defendant sug-
   gested that the testimony of the complaining witness on that
   point was undisputed and consented that it be read, but, after
   the court had ordered it read, asked to have all the other evi-
   dence read, and on refusal thereof by the court objected to the
   reading of the testimony first mentioned. *Held,* that it was not
   error to permit the reading of such testimony, counsel for de-
   fendant having himself invited it.

ERROR to review a judgment of the circuit court for Rich-
land county: GEORGE CLEMENTSON, Circuit Judge. *Af-
firmed.*

*L. H. Bancroft,* for the plaintiff in error.

For the defendant in error the cause was submitted on the
brief of the *Attorney General* and *A. C. Titus,* assistant at-
torney general.

TIMLIN, J.   The plaintiff in error contends that the ver-
dict is contrary to the evidence given upon the trial, and that
the court erred in its instructions to the jury and in per-
mitting the court reporter to read to the jury from his notes
the testimony of the complaining witness.   The plaintiff in
error was charged with having, on August 30, 1908, sold in-
toxicating liquors and drinks to one Thomas Mead without
having first obtained a license.   The evidence on the part of
the state consisted of an admission by the plaintiff in error
that he had no license, and the testimony of Thomas Mead,
a boy sixteen years old, to the effect that he was at the place

in question, which was formerly and up to about July 7, 1908, a licensed saloon, at three different times on August 30, 1908; once in the forenoon about 10 o'clock and once about noon, and the third time in the afternoon. At this third visit, which was on his return from a baseball game, he claims to have received from plaintiff in error a drink and also a half pint of whisky. His testimony is somewhat uncertain. In one place he testifies that he called for a half a pint of Red Top whisky right in the presence of *Adam Markley,* Robert Ferguson, and Perry Poole. Immediately in connection with this he testifies:

"I told Jim, and Jim told *Ad.* Jim and I walked up from the ball game. Jim Markley he and I walked up from the ball game together, and I told him as I walked up that I wanted it. I told him that I wanted a half pint of Red Top whisky before we got to the building. I didn't call for anything in the building. He told his father and he gave it to me. He whispered it to his father over the bar. Jim Markley was there at the same time Ferguson and Poole was. He went right on through the building. That was after I had this drink. *Ad Markley* filled up the bottle and gave it to me after Jim whispered to him."

The witness testified that after this purchase he went toward the river, where there were boys swimming, and the evidence is not disputed that he had a bottle of whisky in his pocket at this swimming place, which some of the boys took out of his pocket and carried to a justice of the peace. The sheriff searched the premises in question a day or two after, and the only intoxicating liquor he found in the place was a keg of port wine, which had been tapped, and another keg of blackberry brandy, which had not been opened. The plaintiff in error denied the sale to the complaining witness, stating that there was nothing in the saloon room but cherry cider and orange cider and red and white pop and ginger ale and raspberry on the day of the alleged sale to the complaining witness. He came from his home to the saloon

building about 9 o'clock on the day in question and remained there perhaps three or four hours, and his son, James Markley, Bob Ferguson, and Perry Poole were also there.  He denied that James Markley whispered to him over the bar and denied selling or giving any intoxicating liquor to the complaining witness.  James Markley testified to the same effect, and added that he did not see the complaining witness in the saloon on Sunday afternoon, that Bob Ferguson and Perry Poole drank temperance drinks there that day, and that he was down to the ball game and returned from the game with the complaining witness, but the latter did not stop at the saloon building; did not go inside.  Clark Weller saw complaining witness around the saloon building almost all day, but he did not come in more than once, but this witness was not in the saloon in the afternoon.  *Adam Markley,* recalled, testified that he was not in his place of business at all on the day in question after the ball game started.  Perry Poole testified that he was in this saloon building on the 30th of August for a few minutes with Bob Ferguson and he got something to drink; got what they called for, cherry cider. This was before the ball game, and he was not in the place after the ball game.  Robert Ferguson was not in the place after the ball game.

This is the substance of the testimony.  Counsel for plaintiff in error places great stress on the testimony of the complaining witness to the effect that Ferguson and Poole were in the saloon building when he bought this bottle of whisky, and assumes this is a very damaging statement.  We do not share in this view of the evidence.  At one of the three visits of the complaining witness in the saloon on that day these two men were present, and the jury might well have found that the complaining witness was mistaken as to which time. There is no doubt a question of veracity between the complaining witness on one side and the two Markleys on the other, but that was for the jury under all circumstances.

After the jury had retired and had been some time in deliberation they returned into court and announced that they had not agreed upon a verdict, and reported that the disagreement was concerning the time of day at which the unlawful sale was supposed to have been made. The court indulged in some comments to the effect that his own memory was uncertain in that respect, and the counsel for plaintiff in error suggested that the undisputed evidence on the part of the complainant was that he bought the liquor at his third visit to the saloon building in the afternoon, after coming from the ball game, and consented that "the testimony should be read." The court thereupon ordered the reporter to read the testimony of the complaining witness. Counsel for plaintiff in error requested the court to "permit the other evidence to be read." The court answered: "No; I will not. You said the testimony of that boy was undisputed. I do not recall that the boy said that this whisky was got after the ball game, but I did not want to say so before. Now you may read the testimony." Defendant objected to the reading of such testimony. The testimony of Thomas Mead was again read to the jury by the reporter. We see no error in this proceeding, and we think that counsel for the accused himself invited the reading of the testimony.

Finding no reversible error in the record the judgment should be affirmed.

*By the Court.*—Judgment affirmed.